# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1984 | **DATE** | 5/2/2003 |
| **CASE TITLE** | Securities and Exchange Commission vs. Heartland Group, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Motion of Receiver to compel [81-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices 7 | |
| ✓ | Notices mailed by judge's staff. | | MAY 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 133 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/2/2003 date mailed notice | |
| MD | courtroom deputy's initials | | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | No. 01 C 1984 Judge Joan H. Lefkow |
| HEARTLAND GROUP, INC., ) ) | |
| Defendant. ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Securities and Exchange Commission ("SEC"), filed this action on March 21, 2001 seeking appointment of a receiver for the benefit of investors to marshal, conserve, protect, hold, sell or otherwise dispose of, all assets of defendant Heartland Group, Inc.'s High-Yield Municipal Bond Fund, Short Duration High-Yield Municipal Fund and Taxable Short Duration Municipal Fund (collectively the "Funds"). The court appointed Phillip L. Stern ("Receiver") as receiver over any such assets. Before the court is the Receiver's motion to compel the Bank of New York ("BNY") to release all funds it is maintaining or intends to maintain in a reserve created to pay the expenses, including attorney's fees and costs, of U.S. Trust Company of Texas, N.A. ("U.S. Trust"). For the reasons set forth below, the court denies the motion.

## BACKGROUND

On August 1, 1998, a Master Trust Agreement was formed between Desert Hot Springs Public Financial Authority (the "Authority") and Rancho Healthcare Inc., with U.S. Trust serving as the trustee. Under the Master Trust Agreement, the Authority issued 1998 Series A Tax-

Exempt Bonds in the amount of $13,900,000 and 1998 Series B Taxable Bonds in the amount of $8,430,000 (collectively "Desert Hot Springs Bonds"). The proceeds of these Bonds were used to build a hospital in San Bernadino, California (the "Facility"). The Receiver claims that Heartland's Taxable Short Duration Fund currently owns $250,000 of the Authority's Series B Taxable Bonds.

In June 2001, U.S. Trust sold substantially all of its corporate trust business to BNY, thereby causing U.S. Trust to become the former trustee and BNY to become the successor trustee under the Master Trust Agreement. At the time of the sale, the Desert Hot Spring Bonds were in default.

On November 26, 2001, the Receiver instituted an action, on behalf of the bondholders whose interests he represents, in this court before the Honorable John A. Nordberg (case number 01 C 9078) against U.S. Trust (at this point the former trustee) alleging breach of fiduciary duty, breach of contract and negligence arising from the default of the Desert Hot Springs Bonds. On August 12, 2002, that action was transferred by the Multi-District Litigation Panel to the United States District Court for the Central District of California for coordinated pretrial proceedings with several other bondholder actions pending against U.S. Trust and other defendants arising out of the default of the Authority's bonds. These coordinated bondholder actions are in the early stages of litigation and discovery has not yet commenced.

BNY sent a "Notice to Holders of the Desert Hot Spring Bonds" ("Notice") on October 4, 2002 which stated that as of that date BNY, as successor master trustee, held $251,813.39 in the Bond Fund established under the Master Trust Agreement. The Notice stated that the successor master trustee had established a "Bondholder Claim Reserve" to cover the ongoing and

anticipated estimated expenses, including those of BNY, properly payable from the trust assets under the Master Trust Agreement. The Notice also stated that as successor master trustee BNY established a "U.S. Trust Reserve" to cover the expenses that U.S. Trust estimated it would incur as a result of ongoing bondholder litigation.[1] This U.S. Trust Reserve is the point of contention between the parties here.

On October 29, 2002, the Receiver brought the current motion to compel, arguing that under the terms of the Master Trust Agreement, the Master Trustee is entitled to reimburse only "itself" for certain costs and expenses incurred as Master Trustee and that no former trustee is entitled to reimbursement. Therefore, according to the Receiver, BNY is not permitted to reimburse U.S. Trust for costs and expenses incurred after it was removed as Master Trustee because no provision of the Master Trust Agreement allows the Master Trustee to withhold bondholder funds to pay a former trustee's costs and expenses. The Receiver asks this court to compel BNY to release all funds it is currently holding in the U.S. Trust Reserve and to deposit them into the bond fund for the benefit of all the bondholders.[2]

## DISCUSSION

In response to the Receiver's motion to compel, BNY argues (1) the court lacks jurisdiction to hear the motion; (2) the documentary evidence establishes that the former trustee is entitled to reasonable attorney's fees and expenses and priority payment; and (3) the Receiver

---

[1] The Receiver alleges that $1,266,600 is being held to pay the attorney's fees and expenses that U.S. Trust incurs in defending the multiple actions commenced against it by Bondholders. This amount is confirmed in an affidavit given by Loretta Lundberg, a Vice President of BNY.

[2] On March 11, 2003, the court allowed U.S. Trust to intervene for the limited purpose of contesting the Receiver's motion against BNY. See SEC v. *Heartland Group, Inc.*, No. 01 C 1984, 2003 WL 1089366 (N.D. Ill. March 11, 2003).

3

has failed to establish grounds for injunctive relief. U.S. Trust argues that (a) the Master Trust Agreement creates indemnification rights in favor of U.S. Trust; (b) grounds for injunctive relief have not been demonstrated; (c) the motion is premature; and (d) the Receiver's motion should be dismissed because U.S. Trust has not been afforded Due Process.

As always, the court will begin its analysis with the issue of jurisdiction. While BNY does not specifically state which jurisdiction (subject-matter or personal) this court lacks, its argument focuses on the issue of personal jurisdiction, both *in rem* jurisdiction over the property at issue and *in personam* jurisdiction over BNY itself. In any event, subject matter jurisdiction could not be seriously disputed, as the motion to compel would fall under this court's jurisdiction in the original action brought by the SEC against the Heartland Group for violations of the securities laws.

The issue of personal jurisdiction, however, is more complex. After a review of the cases discussed more fully below, this court could have personal jurisdiction in two scenarios: (1) if the court had *in rem* jurisdiction over the assets or (2) if the court had *in personam* jurisdiction over BNY. The Receiver focuses most of his argument on the first avenue of personal jurisdiction, claiming that this court has *in rem* jurisdiction over the assets in question based on this court's March 21, 2002 Order (Docket #5). According to the Receiver, this March 21 Order grants the court exclusive jurisdiction over any of the Funds' assets wherever they may be located. *E.g.*, *Wabash R. Co. v. Adelbert Coll. of the W. Reserve Univ.*, 208 U.S. 38, 53 (1908); *Eller Indus., Inc. v. Indian Motorcycle -Mfg., Inc.*, 929 F. Supp. 369, 371-372 n.2 (D. Colo. 1995). BNY counters this argument by noting that while the court may have had jurisdiction pursuant to the

March 21 Order, such jurisdiction was "divested" because the Receiver did not abide by 28 U.S.C. § 754. Section 754 provides,

> A receiver appointed in any civil action or proceeding involving property, real personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754. According to BNY, because no § 754 filing has been made in New York, where the trust assets are located, both the court and the Receiver lack *in rem* jurisdiction over any such assets.

In response, the Receiver first argues that no filing was required because § 754 does not apply when the Receiver is seeking relief from the court that appointed him. The Receiver cites two cases which he believes supports his view. *See, e.g., Scholes v. African Enter., Inc.*, No. 90 C 3989, 1993 U.S. Dist. Lexis 4210, at *8 (N.D. Ill. April 2, 1993) ("Section 754 allows the receiver to 'sue in any district without ancillary appointment' and then imposes limitations upon that extended power; it does not divest the Receiver of his power to proceed in a court that retains ancillary jurisdiction if the required filings are not executed in other districts."); *Tcherepnin v. Franz*, 439 F. Supp. 1340, 1344 (N.D. Ill. 1977) ("Furthermore, the required filing of a copy of the complaint and order of appointment in a district where property involved is situated is not applicable where, as here, the court of appointment already has jurisdiction over

5

the claim involved."); *but see, Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001) ("But [the district court's] jurisdiction over assets in other districts is dependent upon the receiver's filing a copy of the complaint and appointment in that district, a condition that the receiver fulfilled in this case."); *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996) ("By not complying with § 754, the receiver failed to establish control over the property. His failure precluded the district court from using § 754 as a stepping stone on its way to exercising *in personam* jurisdiction over Vista Vision."); *American Freedom Train Fndtn. v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984) ("Section 754 is ancillary to the main suit in which the receiver is appointed, and the purpose of the statute is to give the appointing court jurisdiction over property in the actual or constructive possession and control of the debtor, wherever such property may be located."); *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 460 (9th Cir. 1984) ("A receiver achieves jurisdiction and control of property in districts other than that of appointment by filing copies of the complaint and order of appointment in the district court where the property is located."); *Haile v. Henderson Nat. Bank*, 657 F.2d 816, 823 (6th Cir. 1981) ("Rather, by statute, the territorial jurisdiction of the appointing court is extended to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754.").

After reviewing the aforementioned cases, the court rejects the Receiver's claim that bringing the motion in this court excuses compliance with § 754. *Tcherepnin* and *Scholes*, on which the Receiver relies, are distinguishable. In *Tcherepnin*, the action brought was one seeking to set aside a fraudulent conveyance of land. 439 F. Supp. at 1342. That being the case, it was characterized by the court as a transitory action in which *in personam* jurisdiction over the

defendant was required, not *in rem* jurisdiction over the property in question. *Id.* at 1345. Indeed, the court remarked the significance of this distinction when it noted "if [the fraudulent conveyance action] had been an *in rem* action, 28 U.S.C. § 754 might have to be satisfied. Here, however . . . jurisdiction over [the fraudulent conveyance action] is *in personam* so that jurisdiction over property that may be subject to an *in personam* decree need not be shown for this court to exercise its proper ancillary jurisdiction." *Id.* at 1344. As for *Scholes*, while it does not address the *in personam/in rem* issue, it also was a claim alleging a fraudulent conveyance and relied on *Tcherepnin*, thereby causing the court to infer that it is distinguishable on the same grounds. 1993 U.S. Dist. Lexis, at *7-*8. As discussed more fully below, because *in personam* jurisdiction was present in both *Tcherepnin* and *Scholes*, the failure to meet the requirements of § 754 did not divest the court of jurisdiction. *See, e.g., Vision Communications, Inc.*, 74 F.3d at 288; *Arizona Fuels Corp.*, 739 F.2d at 460; *American Freedom Train*, 747 F.2d at 1073-74.

Moreover, the Receiver's argument that the filing under § 754 is not required when suit is brought in the appointing court stands contrary to cases such as *Vision Communications*, where the D.C. Circuit concluded that the failure to file a § 754 notice prohibited a court from exercising *in rem* jurisdiction over property subject to a receivership action. 74 F.3d at 290. The court noted,

> As the parties here understand, the court's jurisdiction to reach Vista Vision and the Pennsylvania property had to be through the court's agent, the receiver. *Haile*, 657 F.2d at 823, explains that a receiver's compliance with § 754 in a particular district extends the territorial jurisdiction of the appointing court into that district. By not complying with § 754, the receiver failed to establish control over the property.

*Id.* Significantly, the request by the Receiver for its rights in the receivership property in *Vision Communications* was made to the district court in which he was appointed. *Id.* at 288-89.

The Receiver attempts to distinguish *Vision Communications* on grounds that he is not seeking to bring suit against BNY or any other party nor is he seeking to take control or possession of the U.S. Trust funds, but instead seeks an order protecting and preserving such potential receivership assets. Simply put, the Receiver believes *Vision Communications* is distinguishable because in that case the receiver sought control over the funds while here all he seeks is preservation of the funds. No case law is pointed to that would support such a distinction. Moreover, this argument lacks persuasive force because it would allow a receiver to subvert the twin goals of § 754, those being both to give "the appointing court jurisdiction over property in the actual or constructive possession and control of the debtor wherever such property may be located," *American Freedom Train Fndtn.*, 747 F.2d at 1073, and to provide notice of the complaint and appointment of the receiver. *Arizona Fuels Corp.*, 739 F.2d at 460; *SEC v. Equity Serv. Co.*, 632 F.3d 1092, 1095 (3d Cir. 1980). The Receiver's view of § 754 would allow a receiver to sue in the appointing district even when its extra-territorial jurisdiction over the property has been divested. The statute does not mention such an exception in its plain terms. Furthermore, if at least part of the purpose of a § 754 filing is to give notice to parties outside of the appointing district, such a goal would certainly not be advanced by allowing suit in the appointing court to proceed when no filing in other districts has been made.

All this being said, the court pauses to note, as many courts have, that the application of this rule is problematic. When the Receiver was appointed in March 2001, he very well may not have been aware that claims should be filed in New York, and to force him to file claims in all 94

8

districts is a waste of the resources the Receiver has a duty to protect. *See SEC* v. *Infinity Group Co.*, 27 F. Supp. 2d 559, 563 (E.D. Penn. 1998). While the court can easily correct this failure to file such a claim by merely reappointing the Receiver and thereby starting the 10-day time period under § 754 ticking once more, *see Vision Communications*, 74 F.3d at 388, the end result is nothing more than delay and a needless drain of resources for all parties. While true that some courts have stretched the requirements of § 754 and found jurisdiction even when the receiver has not complied with § 754, most such cases present either exceptional circumstances, *e.g.*, *Equity Serv. Corp.*, 632 F.2d at 1093 (court forgave compliance with § 754 where receiver died); *Kilsheimer* v. *Rose & Moskowitz*, 257 F.2d 242, 244 (2d Cir. 1958) (court forgave compliance because of impossibility), or situations where the court had *in personam* jurisdiction. *See, e.g.*, *Arizona Fuels Corp.*, 739 F.2d at 460; *American Freedom Train*, 747 F.2d at 1073-74. A restrictive reading of § 754 would have particular appeal in this case where notice of the SEC complaint and appointment of the receiver is not seriously disputed. Nonetheless, no exceptional circumstances are present, and, as discussed below, the court does not believe it has *in personam* jurisdiction over BNY. The statute is clear and the court has an obligation to apply it as such. Accordingly, because of the failure to file a notice under § 754, the court's *in rem* jurisdiction over the assets has been divested.

At this point, the only way the court could still entertain the Receiver's motion to compel is if *in personam* jurisdiction could be maintained against BNY. Courts have routinely held that the failure to file a § 754 notice does not divest the court of personal jurisdiction it already has. *E.g., Vision Communications, Inc.*, 74 F.3d at 288 ("Of course, a receiver's failure to comply with § 754 cannot deprive a court of personal jurisdiction it already has."); *Arizona Fuels Corp.*,

739 F.2d 455 ("Failure to file under § 754 would not have divested the court of existing jurisdiction); *American Freedom Train*, 747 F.2d at 1073-74 ("If there is *in personam* jurisdiction, it need not be shown that the court has jurisdiction over property under section 754."). In *Vision Communications* the court explained the relationship between § 754 and personal jurisdiction,

> In nondiversity cases, the requirement that a court have personal jurisdiction stems from the Due Process Clause. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). It may be, therefore, that the familiar "minimum contacts" doctrine, *see Insurance Corp. of Ireland, Ltd.* [v. *Compangnie des Bauxites de Guinee*, 456 U.S. 694, 703 n.10, 102 S.Ct. 2099, 2104-05 n.10, 72 L.Ed.2d 492 (1982)] is measured in terms of a defendant's contacts with the United States rather than with the particular forum state. *See Omni Capital*, 484 U.S. at 102 n.5, 108 S.Ct. at 409 n.5 . . . . But even if we assume, *arguendo*, this to be so, there still must be some basis for Vista Vision's "amenability to service of summons." *Omni Capital*, 484 U.S. at 104, 108 S.Ct. at 409. Absent Vista Vision's consent–which it did not give–this means that there must be "authorization for service of summons" on Vista Vision. *See id.*
>
> Vista Vision was never a party in the SEC enforcement action. Both it and the [property] at issue in this case are located in Pennsylvania. Thus, to establish personal jurisdiction over Vista Vision, the receiver would have needed "authorization" to have Vista Vision served in Pennsylvania, indisputably outside the territorial boundaries of the U.S. District Court for the District of Columbia. The interplay between Rule 4(k)(1)(D) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1692 could have provided that authorization. Under Rule 4(k)(1)(D), the service of a summons may establish personal jurisdiction "when authorized by a statute of the United States." Fed. R. Civ. P. 4(k)(1)(D). Section 1692 provides:
>
>> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.
>
> But to invoke § 1692, a receiver first must comply with 28 U.S.C. § 754. . . . By not complying with § 754, the receiver failed to establish control over the

10

property. His failure precluded the district court from using § 754 as a stepping stone on its way to exercising *in personam* jurisdiction over Vista Vision.

*Id.* at 289-90.

The analysis in *Vision Communications* is instructive of the personal jurisdiction approach the court must take here. The relevant question is whether there is "authorization for service of summons" on BNY. As the requirements under § 754 were not satisfied, § 1692 described above cannot serve as the statutory authorization under Rule 4(k)(1)(D) of the Federal Rules of Civil Procedure. Nonetheless, the Receiver argues that personal jurisdiction exists because BNY serves as a national bond trustee for numerous bond offerings, including bonds issued to finance a health care facility located in Chicago. Presumably, the Receiver means to suggest that service may be effected on BNY based on Rule 4(k)(1)(A), Fed. R. Civ. P., which allows for service of a summons to establish jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."

Under Illinois law, personal jurisdiction can be satisfied in a number of ways, including when a defendant is "doing business" in the state, 735 ILCS 5/2-209(b)(4), or by "any other basis" permitted under the United States Constitution.[3] 735 ILCS 5/2-209(c). The "doing business" standard requires a "continuous and systematic course of business in the State" and results in the defendant being "subject to the State's jurisdiction even though the subject lawsuit

---

[3] A defendant may also be subject to the jurisdiction of the Illinois courts for conducting any business within the state. 735 ILCS 5/2-209(a)(1). Where jurisdiction is based on subsection (a), however, the cause of action must arise from the enumerated act asserted against the defendant. 735 ILCS 5/2-209(f). Clearly the cause of action in this case does not arise from any transaction BNY has been a part of in Illinois.

11

may have no relationship to the business that the corporation does within the State." *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d 302, 304, 589 N.E. 2d 803, 803 (1992) (citations omitted).

The Receiver relies on *LaSalle Nat. Bank v. Huntington Nat. Bank*, No. 91 C 6202, 1992 WL 18870, at *1-*2 (N.D. Ill. Jan. 27, 1992), in support of his view that by virtue of serving as trustee for bonds issued to finance a health care facility located in Chicago, BNY is "doing business" in Illinois. In *LaSalle Nat. Bank* the court found that a bank which served as an indentured trustee for several Illinois entities met the "doing business" requirements under Illinois law and had personally availed itself of the forum state sufficient to satisfy a Due Process inquiry. *Id.* The bank in question, however, had further significant contacts with Illinois, including 47 automobile leases with Illinois residents, 1,164 credit card agreements with Illinois residents, 17 personal lines of credit with Illinois residents, served as trustee for *several* industrial revenue bonds issued by various Illinois entities, and had close to $5.5 million in Illinois business. Based on the evidence as presented by the Receiver, the court cannot conclude that BNY is "doing business" in Illinois simply because it is a trustee of bonds issued to finance a health care facility in Illinois. No evidence is presented as to the continuous and systematic nature of BNY's contacts with Illinois. Moreover, no evidence is presented as to how being the trustee of bonds issued to finance a facility in Illinois is actually "conducting business" in Illinois. As the Receiver would have the burden of proving that the maintenance of jurisdiction is proper, *see Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000), the court concludes that it has not demonstrated that BNY is "doing business" in Illinois under 735 ILCS 5/2-209(b)(4).

As for the analysis of whether there is any other basis permitted under the United States Constitution, the standard is the familiar *International Shoe* minimum contacts test, which asks whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940). The meaning of this standard varies depending on whether the state asserts "general" or "specific" jurisdiction over a defendant. *RAR, Inc.* v. *Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1996). General jurisdiction is permitted where the defendant has "continuous and systematic business contacts" with the form state. *Helicopteros Nacionales de Columbia, S.A.* v. *Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to personal jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8.

Certainly no specific jurisdiction analysis can apply in this case, as the court has not been presented with any facts suggesting that BNY has minimum contacts with Illinois that relate to the trust assets at issue here. As for the general jurisdiction analysis, similar to the "doing business" requirements above, the court cannot say based on the record that BNY has continuous and systematic contacts to support general jurisdiction in Illinois. No evidence is presented as to the contacts BNY has with Illinois in being the trustee of a facility that is located in Illinois or how this otherwise shows BNY "purposefully availed" itself of Illinois. *See RAR, Inc.*, 107 F.3d at 1277, quoting *Burger King* v. *Rudzewicz*, 471 U.S. at 474-75. Once again, the court simply cannot say, based on the record as developed, exactly the nature and extent of BNY's contacts with Illinois. As such, the court concludes that this ground for jurisdiction also fails.

## CONCLUSION

For the reasons stated above, the Receiver's motion to compel is denied [#81].

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 2, 2003